IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 15-00031-001 |
| | ) Criminal Case No. 15-00031-002 |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| RAMOND JOHN MARTINEZ, and | ) |
| JUANITA MARIE QUITUGUA MOSER, | ) |
| | ) |
| Defendants. | ) |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE FRANCES TYDINGCO-GATEWOOD
CHIEF JUDGE
AUGUST 19, 2915; 9:39 A.M.
HAGATNA, GUAM

**Motion to Continue Trial**

Proceedings recorded by *mechanical stenography*, transcript produced by computer.

Veronica F. Reilly, CSR No. 2004
Federal Official Court Reporter
520 W. Soledad Avenue
Hagatna, Guam 96910

APPEARANCES


Appearing on behalf of plaintiff:


**OFFICE OF THE UNITED STATES ATTORNEY**
**BY: CLYDE LEMONS, JR., AUSA**
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam



Appearing on behalf of defendant Martinez:


**LAW OFFICE OF CUNLIFFE & COOK**
**BY: F. RANDALL CUNLIFFE, ESQ.**
Suite 200, 210 Archbishop Flores Street
Hagatna, Guam 96910


Appearing on behalf of defendant Moser:


**LAW OFFICE OF LUJAN AGUIGUI & WOLFF**
**BY: DAVID LUJAN, ESQ.**
Suite 300, DNA Building
238 Archbishop Flores Street
Hagatna, Guam 96910



ALSO PRESENT:

Erfel Matanguihan, HSI

# I N D E X

Page

Court granted leave to file motions...........  28

Court vacated the trial date..................  30

Court continued to seal the matter until
August 28, 2015...............................  43

**August 19, 2015; 9:39 a.m.; Hagatna, Guam**

* * *


        THE CLERK:  Criminal Case No. 15-00031, *United States of America v. Raymond John Martinez and Juanita Marie Quitugua Moser Martinez*; hearing on motion to continue trial.

        Counsel, please state your appearances.

        MR. LEMONS:  Good morning, Your Honor.  For the record, Clyde Lemons on behalf of the United States.  Present with me is Special Agent Erfel Matanguihan from HSI.

        THE COURT:  Okay.  Good morning, Mr. Lemons and Agent Matanguihan.

        MR. CUNLIFFE:  Good morning, Your Honor.  Randall Cunliffe on behalf of Mr. Martinez, who is to my right.

        THE COURT:  Good morning, Mr. Cunliffe, Mr. Martinez.

        MR. LUJAN:  Good morning, Your Honor.  David Lujan with Mrs. Martinez.

        THE COURT:  Her name is Martinez also, not Moser?

        MR. LUJAN:  I'm sorry.  It's Martinez now.

        THE COURT:  Oh, okay.  Very well.  All right.  So okay.  Very well.  So good morning, Mr. Lujan and Mrs. Martinez.

        MR. LUJAN:  Is this on?

        THE COURT:  Well, let's see.  Hold on.  Let's

1  see.  Check, check.  Testing, testing, testing.

2          MR. LUJAN:  It is a thrill coming to this

3  courtroom, you know, because of this -- this equipment.

4          THE COURT:  Helps you?  Yeah, it helps a lot of

5  people.

6          MR. LUJAN:  I get to really hear, Your Honor.

7          THE COURT:  I think they're going to try to get

8  that in the Superior Court.  Aren't they?

9          MR. LUJAN:  Well, good.  I've been telling them.

10          THE COURT:  I told them if they need any help,

11  that we'll be happy to help them get it.  Can you hear, Mr.

12  Lujan?  Better?

13          MR. LUJAN:  Yes.

14          THE COURT:  I think sometimes it's like a laser

15  or something.

16          MR. LUJAN:  I'll let you know, Your Honor, if I'm

17  having problems.

18          THE COURT:  Yeah.  Well, it's always good to,

19  yeah, be able to hear.  Can you hear me now?  I'll make sure I

20  try to -- testing.  Can you hear, Mr. Lujan?  Or maybe you

21  need a new one.

22          MR. LUJAN:  Let me try this one.

23          THE COURT:  Yeah, maybe another one would be

24  better.  Testing.

25          MR. LUJAN:  Oh, it's good.

1          THE COURT:  Better?

2          MR. LUJAN:  Yes.  In fact, too loud.

3          THE COURT:  Too loud?

4          MR. LUJAN:  I'm just kidding.

5          THE COURT:  Yeah, I won't be so loud.  I won't be

6     so close.

7          All right.  Here we have a motion.  Okay.  Let me

8     tell something about -- I'm concerned about this motion.

9     First of all, it's way too far out on my calendar.  I

10    understand your calendars and I'm sympathetic, but my concern

11    is, prosecution, you guys aren't ready.  I mean, from what I

12    see in the motion -- and correct me if I'm wrong, but they're

13    saying, look, we have 6,000 pages of discovery.  I assume that

14    you gave it to them, Mr. Lemons, on the date of -- that

15    discovery was due --

16          MR. LEMONS:  Yes, Your Honor.

17          THE COURT:  -- July 17th.  But then it goes on to

18    say that the prosecution has to produce other documents, other

19    additional law enforcement reports, other texts, other

20    correspondence, photographs and other documents.  And then,

21    lastly, you guys have executed search warrants on June 5th,

22    and they're -- the agents are currently processing the

23    information, and the prosecution will produce or make those

24    available to the defense as soon as practicable.

25          MR. LEMONS:  They have the search warrants.

1           THE COURT:  Okay.  So all that stuff is taken

2    care of on the search warrants?

3           MR. LEMONS:  Yes, Your Honor.

4           THE COURT:  Okay.  Well, this is what the motion

5    says.

6           MR. LEMONS:  The documents they were talking

7    about, there were cell phones that were imaged.

8           THE COURT:  Okay.

9           MR. LEMONS:  And they received all of that

10   material as well --

11          THE COURT:  Okay.

12          MR. LEMONS:  -- from the imaged cell phones.

13   They were actually the defendants' cell phones that were

14   imaged and returned to the defendants.  And so they did get

15   the images that the -- the only thing that's outstanding, and

16   that's because Mr. Black isn't here, is that there's a CS

17   who's entered into a plea agreement, and I'm waiting for him

18   to return to Guam so that I can turn over the plea agreement.

19          THE COURT:  Uh-huh.  All right.  So all this

20   stuff then -- okay.  I was concerned about this because it

21   looks like, based on the motion, that you guys still are in

22   investigation and had not turned over -- I mean, you saw the

23   motion, right?  You signed it?

24          MR. LEMONS:  Yes, I saw the motion.

25          THE COURT:  So all of this was turned in after

1  the motion was -- was filed on August 13th?

2              MR. LEMONS:  Well, they had --

3              THE COURT:  Or before the motion was filed?

4              MR. LEMONS:  They got the -- I think the only

5  thing they got after the motion would have been the cell phone

6  images.

7              THE COURT:  That's the only thing that was

8  pending?

9              MR. LEMONS:  Yes, Your Honor.

10             THE COURT:  So everything -- so pretty much all

11 the discovery is with the defense counsel?

12             MR. LEMONS:  Yes, Your Honor.

13             THE COURT:  As of -- as of when?  When was --

14 when did they get it?  When did they get everything?

15             MR. CUNLIFFE:  I believe we got the last one on

16 Monday, Your Honor.  The cell phone records.

17             THE COURT:  This past Monday?

18             MR. LUJAN:  Yes.

19             THE COURT:  So everything is -- what is today?

20 Today is --

21             MR. LUJAN:  Wednesday, Your Honor.

22             THE COURT:  Yeah, August 19th.  So on this

23 Monday, 17th?

24             MR. LUJAN:  Yes, Your Honor.

25             THE COURT:  August 17th.  All right.  So

everything is with them.  All right.  Because that kind of

alarmed me when I saw the motion, Mr. Lemons, that you guys --

it sounded like you guys were still in investigation.  All

right.  So the only -- now the only thing that needs to be

done is the name of the person who's --

MR. LEMONS:  No.  They know who the CS is.

There's videotape --

THE COURT:  Is there a confidential informant?

MR. LEMONS:  Yes, Your Honor.

THE COURT:  Okay.

MR. LEMONS:  What they need is his plea

agreement, because he's pled in an unrelated case.

THE COURT:  And he's supposed to testify in this

case?

MR. LEMONS:  Yes.

THE COURT:  Against both defendants?

MR. LEMONS:  Yes, Your Honor.

THE COURT:  Uh-huh.  And so is the plea agreement

-- I mean, has it been filed, or where is the plea agreement?

MR. LEMONS:  The case was sealed, and I'm not

sure if it's been unsealed or not.  I believe Mr. Cunliffe

represents one of the co-defendants in that case.

THE COURT:  Okay.  But not -- but not this

co-defendant?  You're not --

MR. LEMONS:  Not this co-defendant.

1          MR. CUNLIFFE:  No, Your Honor.

2          THE COURT:  I was going to say, that might be a

3  big problem.

4          MR. LEMONS:  No, there's -- there -- I don't

5  believe there's conflict.

6          THE COURT:  So -- okay.  So in terms of pending

7  -- anything pending, it's just the plea agreement.  And you

8  don't have access to that as a prosecutor?

9          MR. LEMONS:  Well, I have access to it, but I

10  don't want to turn over something in another attorney's file

11  when he's not here.

12          THE COURT:  But it's going to be in your case.

13  You're going to use that person in your case.  I mean, you

14  already discussed that with him.

15          MR. LEMONS:  Yes, Your Honor.

16          THE COURT:  That doesn't make sense to me.  You

17  can't call Mr. Black?

18          MR. LEMONS:  Well, he asked me to wait until he

19  returned, which will be, I think, the 22nd.

20          THE COURT:  Mm-hmm.

21          MR. LEMONS:  He knows that it has to be turned

22  over.

23          THE COURT:  Well, he knows there is a speedy

24  trial.  And this trial is scheduled for September 14th.  Does

25  he know that?

1          MR. LEMONS:  Um, he -- yeah, he knows that.

2          THE COURT:  So he said to wait until he comes

3    back to give these guys access to the plea agreement?

4          MR. LEMONS:  That's what he -- that's what he

5    said.

6          THE COURT:  Yeah.  But don't you think that's

7    kind of not very responsible, considering you have a speedy

8    trial issue here?  I mean, I'm asking you, as a prosecutor,

9    don't you think he -- you guys should have coordinated that as

10   prosecutors?

11         MR. LEMONS:  Well, the fact is, I didn't even

12   realize he was going off island until after he left.  But I

13   guess you're right, Your Honor.

14         THE COURT:  I mean, it just -- you know, it just

15   seems more reasonable.  It's your case.  It's going to be your

16   witness, right?

17         MR. LEMONS:  Yes.

18         THE COURT:  Even though it's his -- okay.  All

19   right.  So that's what's pending.  So -- okay.  I want to know

20   what's pending.  What exactly is pending here?  So it's just

21   that, which is important.  And he's not coming back until

22   when?

23         MR. LEMONS:  22nd.

24         THE COURT:  This weekend?

25         MR. LEMONS:  Yes, Your Honor.

1          THE COURT:  Saturday.  Fred Black is coming back

2     this Saturday.  Okay.  All right.

3          And this defendant, all he has left is a plea

4     agreement and his offer of proof in terms of what he's going

5     to testify against these two defendants?

6          MR. LEMONS:  Well, Your Honor, this particular

7     individual has made phone calls and had meetings with the

8     defendants, and they're all recorded.  The meetings --

9     in-person meetings are audio and video recorded, and the

10    telephone calls are audio recorded.  And they have all of

11    those, so they know exactly what he's going to testify to.  In

12    addition, there are reports that detail conversations that the

13    agents had with the witness.  So I don't think that there's

14    any surprises as to what he's going to testify to.

15         THE COURT:  Okay.  I guess the only thing is --

16    they're going to want to know is what's the deal that the

17    prosecutor gave him.

18         MR. LEMONS:  Correct.

19         THE COURT:  And you're pretty certain he's

20    already pled; it's just that the plea agreement -- you just

21    don't know whether -- you just don't have access to the -- you

22    can get access, but you don't want to get access --

23         MR. LEMONS:  That's --

24         THE COURT:  -- because he made a deal with Fred

25    Black.

1          MR. LEMONS:  Yes, Your Honor.

2          THE COURT:  Well, why don't you just talk to the

3    U.S. Attorney and see if you can turn that over.  I just don't

4    understand that.

5          MR. LEMONS:  Okay.

6          THE COURT:  Okay?

7          MR. LEMONS:  I'll do that.

8          THE COURT:  Yeah.  I think so.  I mean, it just

9    makes sense.  If you can't get ahold of Fred Black, that just

10   doesn't sound right to me.  It really doesn't.

11         MR. LUJAN:  Your Honor --

12         THE COURT:  Okay.  So -- so that -- so we've got

13   the discovery issue down.  So that's -- all that's left is

14   just the plea agreement.

15         MR. LEMONS:  Yes.

16         MR. LUJAN:  We think there's more, really.

17         THE COURT:  You think there's more missing?

18         MR. LUJAN:  Yes, Your Honor.  And for example,

19   well, we have received the discovery pertaining to the cell

20   phone searches.  You know -- you know, our plan is we will be

21   filing a motion on that.  And, you know, we need more time to

22   analyze this discovery.  We do have -- we're just about ready

23   to file a motion on the -- on what took place on June 5th in

24   Torrance, California, on that.  But we just discovered that a

25   tracker was used, you know, in California without a tracker

1  warrant, and so, you know, of course we have a letter of

2  discovery to the government.  And we believe that, you know,

3  we'll be amending that letter, you know, to include these

4  things, and in the motion that we're filing to suppress the

5  evidence from the Torrance search.

6          You know, one thing that we plan on asking for is

7  a -- or rather an evidentiary hearing regarding, you know, the

8  officers that were involved, both local police officers, you

9  know, from the Torrance department and, you know, HSI agents

10  that were involved.

11          THE COURT:  Can I just ask you a question?  I

12  don't know.  Either side can answer it.  With the exception of

13  the -- was it cell phone -- cell phone records, Mr. Cunliffe,

14  is that what you said?  That was turned over on August 17th?

15          MR. LUJAN:  It was the data from the cell phones,

16  Your Honor, the photos --

17          THE COURT:  Data from the --

18          MR. CUNLIFFE:  Photographs that had been taken on

19  them --

20          THE COURT:  Okay.  With the exception of that,

21  that was turned over August 17th, am I to assume that all the

22  other discovery was turned over on July 17th, then?

23  Everything was turned over on the date that it was due?

24          MR. LEMONS:  The only -- yes, Your Honor.  The

25  reports from the police and HSI from the incidents that

1  happened in Torrance, California, have all been turned over.

2          THE COURT:  Okay.  So -- but it was turned over

3  on July 17th?  That's my question.  Everything was turned over

4  on July 17th, with the exception of the cell phone data?

5          MR. LEMONS:  That's correct.

6          THE COURT:  Okay.

7          MR. LUJAN:  Your Honor, our position is that

8  there are still more because, for example, you know, laptops

9  that were seized and other electronics -- so we'll be, like I

10  said, amending our discovery letter to Mr. Lemons.  And we

11  believe that -- you know, that there will be more discovery

12  coming.  Okay.  And you take, for example, the -- the cell

13  phones, you know --

14          THE COURT:  The cell phone record that were

15  turned over --

16          MR. LUJAN:  Well, the cell phone records, Your

17  Honor, that were -- there were -- there was a search, Your

18  Honor, of cell phones -- five cell phones, I believe, on

19  July 25, 2014, and we believe that's pertinent and will be

20  requesting for that, you know, when Ms. -- well, Ms. Moser

21  then and Mr. Martinez there.

22          THE COURT:  You mean Mrs. Martinez?

23          MR. LUJAN:  She is now.  I said when -- Ms. Moser

24  then.

25          THE COURT:  Oh, okay.

1    MR. LUJAN:  Yeah.  You know, when they came in

2 from California, you know, their cell phones were all, you

3 know, taken from them for a few hours.  And, you know, of

4 course our position is they were tinkered with.  And so those

5 are things that we'll be asking for, because we believe that,

6 you know, they're subject to a -- you know, a motion to

7 suppress.  And we do believe that that impacts this -- this

8 case.  But until we -- you know, we receive those things, you

9 know, we can't, you know, definitively say, you know -- you

10 know, what -- what the result would be other than that we

11 believe that they need to turn that over to us.

12    THE COURT:  I'm sorry.  What is it that they need

13 to turn over?  Is it that you think -- I'm not clear on that.

14    MR. LUJAN:  Your Honor, they took five cell

15 phones --

16    THE COURT:  Okay.  The -- okay.  Law enforcement

17 --

18    MR. LUJAN:  -- at the airport.  And I believe,

19 you know, they do what they do.  They scan those phones and

20 take information from them and so -- without a warrant.  And

21 then they returned it after two hours.  They gave it back

22 simply because Mr. Martinez and Ms. Moser at that time were,

23 you know, insisting -- refused to give them consent and, you

24 know -- and were insisting, you know, that they have no right

25 to do that.  Finally, they returned that.  But we believe that

1  they obtained information that may affect, you know, the

2  outcome of this case.  But until we get that and analyze it

3  as -- you know, we won't be able to analyze it, but our

4  intention is to file motions, you know, to suppress on the

5  basis of, you know, that search and, I guess, temporary

6  seizure.

7              THE COURT:  So you got -- your clients got back

8  the five cell phones?

9              MR. LUJAN:  Yes.

10             THE COURT:  They got it back.  But you -- but

11  you're saying that you believe that the --

12             MR. LUJAN:  That they took some -- you know, they

13  were able to obtain information from the -- you know,

14  specifically from Mr. Martinez and Ms. Moser's cell phones.

15             MR. LEMONS:  Your Honor, there were five cell

16  phones taken.  There were two cell phones imaged.  According

17  to my agent, case agent, they didn't have time to search all

18  the phones.  They imaged two and they returned all of them

19  back to the defendants.

20             THE COURT:  Okay.  So there's nothing -- they

21  don't do anything.  You're representing that the agents did

22  not scan it, try to retrieve any information?

23             MR. LEMONS:  That's what I've been told, Your

24  Honor.  And the agent is here.

25             MR. LUJAN:  Your Honor, sorry.  We're skeptical,

1    but, you know --

2               THE COURT:  Well, the agent is here, though,

3    and -- yeah.

4               MR. LUJAN:  Well, they should respond to -- you

5    know, I mean, we'll be sending that thing, and you know they

6    can respond to it.  But, you know, we believe that we're

7    entitled, you know, to get that -- to get that information.

8    And then, you know, of course -- and file motions if we

9    believe they're warranted.  And at that point, they can --

10              THE COURT:  Well, you have five -- you have one

11   less motion to file now, besides what you guys are behind on

12   filing because it's already August 17th.

13              MR. LUJAN:  Right.

14              THE COURT:  Those motions -- I mean, if anything,

15   unless he didn't know that because you just got this other

16   cell phone -- I don't know.  I don't know how you guys are

17   doing your discovery other than what you've just told me, but

18   he's indicated that they -- he's representing as law

19   enforcement, through his law enforcement officer, that they

20   did not scan it.

21              MR. LUJAN:  Well, that's what they claim, Your

22   Honor.  But, you know, of course, you know, we still want --

23   you know, we still want what was --  you know, the information

24   on what was done by the Customs people up there and --

25              THE COURT:  Oh, you want to see if they have a

1   report.  You don't think they submitted a report?

2              MR. LUJAN:  I don't know, Your Honor, until they

3   respond, you know.

4              MR. LEMONS:  Your Honor, there's a report.  But

5   only two of the phones were imaged, and they got all of the

6   information that was on the phones.  Moreover, the defendant

7   has got the phones back.

8              THE COURT:  Yeah.  So I guess he's asking, was

9   there a report filed by the agents that during the

10  confiscation of the five cell phones, agents did X, Y, Z,

11  confiscated for so many hours, returned it.  Is there a

12  report?

13             MR. LEMONS:  There is a report that -- there is a

14  report that there were five phones.

15             THE COURT:  Okay.  And you guys gave it -- you

16  already gave it?

17             MR. LEMONS:  Yes, Your Honor.

18             THE COURT:  Okay.  So Mr. Lujan, he's -- he gave

19  you the report.  He said there is a report.

20             MR. LUJAN:  Well --

21             THE COURT:  You guys already have it in your

22  custody.

23             MR. LUJAN:  I'm not sure we have that in our

24  custody, Your Honor, you know, as far as what was done up at

25  the airport.

1          THE COURT:  Okay.  Well, he's representing that.

2   So I assume --

3          MR. LEMONS:  Your Honor --

4          THE COURT:  -- he's an officer of the Court.  I

5   take his word for it.

6          MR. LEMONS:  -- the one thing about HSI that they

7   do that's different from every other federal agency, thank

8   goodness, is that they number their reports 1 through 103, and

9   there's no gap --

10         THE COURT:  Good.

11         MR. LEMONS:  There's no gap in those reports.

12         THE COURT:  Okay.  All right.  Mr. Lujan, so

13  that's not -- that's not an issue then.  The only issue, it

14  sounds like -- okay.  Any other issue, though, with regard to

15  discovery?

16         MR. LUJAN:  Your Honor, we'll be -- well --

17         THE COURT:  I guess, you know --

18         MR. LUJAN:  Like I said, we'll be sending

19  additional discovery -- you know, another discovery letter to

20  -- to Mr. Lemons.  But we can file a motion, Your Honor,

21  motion to suppress, this week.

22         THE COURT:  Well, no, no, no.  Look, you're

23  already passed it.  You guys already passed the motion date.

24  I mean, right now nobody's filed motions, so everything looks

25  pretty fine to me, I suppose.  Here's the deal:  We have a

1    trial set for September 14th.  I looked at this -- you know, I

2    looked at the motion that was stipulated by counsel.  It

3    indicates that there's discovery that's pending.  But now we

4    find out that that's not true, except for one issue, and that

5    is the informant -- the informant issue.  And then they have

6    to just make that discoverable to defense.  That's all.

7         And, I mean, I suppose with regard to the cell

8    phone data that was submitted on Monday, is there something

9    complicated about that you guys -- I mean, because that's

10   outside of the discovery date.  Is there something complicated

11   about that, that -- that concerns the parties, the defense and

12   counsel?

13        MR. LUJAN:  Well, Your Honor, you know, we have

14   to get someone to analyze, you know -- you know, the phones

15   that were returned, the data.  We need to get, you know,

16   someone that knows what they're doing.  I'm still, Your

17   Honor -- you know, I'm still using a cell phone, you know,

18   that flip -- one of those flip phones.  I don't even know how

19   to text.  So I need to get an expert on that.  Yeah.

20        And -- but, you know, Your Honor, going to the

21   motion cutoff, you know, I mean, if there was an agreement

22   among us -- and I understand the agreement is worthless

23   without the Court's blessing, but that -- you know, that --

24   you know, that we would extend the cutoff date.  And that's

25   why, you know, we tried to beat, you know, and put in the

1    stipulation, I believe, on the -- when was that?  I believe

2    Thursday or Friday, Your Honor.

3              THE COURT:  The stipulation --

4              MR. LUJAN:  I believe Thursday, the 13th.  Is

5    that a Thursday?

6              THE COURT:  Okay.  The 13th is --

7              MR. LUJAN:  Whatever it was, Your Honor.

8    Whatever that date is.  Today is what, the 19th?

9              THE COURT:  I think it is Thursday.

10             MR. LUJAN:  Right, Thursday.

11             THE COURT:  Okay.

12             MR. LUJAN:  So that's -- you know, so I believe,

13   you know, Your Honor, that, you know -- that in the interest

14   of justice, the Court should allow us to file the motion to

15   suppress.

16             THE COURT:  Okay.  Well, all right.  So what's

17   before me is the request to continue the trial date because

18   there were issues with discovery.  And now we find out that

19   there is only one pending issue, which is important because

20   it's going to be a key witness, and they have to get --

21   coordinate that with Fred Black and your U.S. Attorney.

22             MR. LEMONS:  Your Honor, I'll go over his head

23   and I'll get it.

24             MR. LUJAN:  Your Honor, there's another issue in

25   discovery that -- like I mentioned earlier, just discovery,

1    Your Honor, that in the search, you know, in California --

2               THE COURT:  Okay.

3               MR. LUJAN:  -- that a tracker was placed on the

4    -- I believe on the van that was being used by, you know, the

5    defendants and that there was -- we believe there was no, you

6    know, tracker warrant that authorized that.  So that's -- you

7    know, we just -- we just got that information, so that's one

8    thing that we'll be asking, you know, again, of Mr. Lemons,

9    because that does affect also the motion to suppress that, you

10   know, we are preparing to file regarding the search and

11   seizure in Torrance, California.

12              THE COURT:  Mm-hmm.

13              MR. LUJAN:  So that, again, you know, is another

14   piece of discovery that we just, you know, came by, and of

15   course we're going to be asking the government to provide us

16   with that.  But in fairness to Mr. Lemons, I've never

17   discussed this.  I just -- with him.  We just got the

18   information.

19              THE COURT:  Okay.  What do you mean you just got

20   the information?  Just --

21              MR. LUJAN:  I -- you know, I have --

22              THE COURT:  Through your own investigation?

23              MR. LUJAN:  Yes, Your Honor.

24              THE COURT:  Okay.  I thought you just said you

25   just got it from the prosecutor.

1          MR. LUJAN:  Oh, no, no, Your Honor.  Mr. Lemon is

2    unaware of this.

3          MR. LEMONS:  Your Honor.

4          THE COURT:  Yeah?

5          MR. LEMONS:  This is what happened:  When the

6    agents found out that the defendants were leaving Guam, they

7    did their homework and they found out where they were staying.

8    And they actually saw them when they rented the van that they

9    rented.  And this was in California.  And then on the day of

10   the deal, the CS was there, and they followed the defendants'

11   van to the meet.  There was no tracking device.  And if --

12   there's no report of any -- there's none -- there was no -- at

13   least I haven't been told that there was something put on

14   there surreptitiously and outside of the law and without a

15   warrant.  But from everything that I've looked at, they did

16   their homework.  They -- they followed the van.  They set up

17   the meet and they followed the van to the meet.

18          THE COURT:  Okay.  Okay.  Mr. Lujan, that sounds

19   like one less motion there.

20          MR. LUJAN:  Well, Your Honor --

21          THE COURT:  That should help you.

22          MR. LUJAN:  You know, we'll be submitting it.  I

23   tell you what, I just viewed in another case -- in another

24   case involving drugs, just as big, I viewed the evidence, and

25   there was a gunshot that went off at a search here in Guam.

1   And I've read the entire report, police report, you know.  And

2   when I say "police report," what I mean is, you know, the

3   federal agents.

4               THE COURT:  Right.

5               MR. LUJAN:  A report.

6               THE COURT:  Okay.

7               MR. LUJAN:  And my understanding is that a gun

8   was discharged by one of the agents, you know, that was at

9   that search, you know, accidentally.  And in the entire

10  report, it doesn't mention about the gun being discharged.

11  So, you know, a lot of time these reports, they may not be

12  lying, but they're not, you know -- you know, they don't

13  include everything that happens.

14              THE COURT:  And you usually flush that out during

15  cross-examination if you can't figure that out in discovery.

16              MR. LUJAN:  But, Your Honor, if there was -- if

17  there was a tracker used without -- you know, without --

18              THE COURT:  Without a warrant?

19              MR. LUJAN:  -- without the warrant, I believe

20  that, you know, it may, again, have an impact on the motion to

21  suppress that we're filing.  And so I believe that we're --

22  you know, I believe that -- and all it does is -- is that, you

23  know, it's going to give Mr. Lemons, you know, just, you know,

24  an additional assignment that is, you know, to verify, guys,

25  is it true, you know, was there a tracker used without, you

1   know, obtaining a tracker warrant, you know, beforehand?

2           THE COURT:  Okay.  But Mr. Lujan, I think he just

3   said that there was not.  They didn't need it because they

4   were following him.

5           Did you just say that?

6           MR. LEMONS:  And Special Agent Mantanguihan was

7   in California.  He was there.

8           MR. LUJAN:  Well, he was not in charge.  It was,

9   I believe, Agent -- what's his name -- Hernandez --

10          THE COURT:  Okay.  But --

11          MR. LUJAN:  -- that was in charge.

12          THE COURT:  All right.  But here's the deal.  So,

13  I mean, all these things you talk about here -- so this is the

14  way it looks like to me.  You guys all have the discovery.

15  Everything's there, really.  And the prosecution has

16  represented that, you know, it was all given on the day that

17  it was supposed to be given.  And we have trial in four weeks.

18  I mean, you know, I think I would have been amenable to say,

19  okay, let's move the trial, if you didn't have your discovery

20  based on the motion.  But it sounds like you have everything.

21          MR. LUJAN:  Your Honor, we understand -- no, we

22  understand that --

23          THE COURT:  I'm looking at the motion.  That's

24  all I'm --

25          MR. LUJAN:  No, I -- I believe there was an

1  officer that pulled this tracker from -- out from under the

2  car.

3          THE COURT:  In the mainland?

4          MR. LUJAN:  In California, yes.  And so, you

5  know, I mean, we believe, you know, that --

6          THE COURT:  Okay.

7          MR. LUJAN:  -- we have a good faith basis, you

8  know, to make this claim, notwithstanding what -- you know,

9  what -- you know, what the agents have said and what Mr.

10  Lemons has been, you know, led to believe.  I mean, the last

11  person you want to -- to -- to tell, you know, that you did

12  something illegal, if you were an officer, is the prosecutor.

13  So, you know --

14          THE COURT:  Okay.

15          MR. LUJAN:  -- doesn't mean that because they're

16  saying that it -- you know, that -- you know, that they were

17  there, they didn't need a tracker.  We viewed them.  We were

18  -- there was a visual, you know, on them all the time, doesn't

19  mean, you know, that, you know, a tracker was not used, Your

20  Honor.

21          THE COURT:  Okay.  So are you telling me that --

22  okay.  So we took care of the discovery stuff.  And so the

23  pretrial motions were due last week, Friday.  Are you telling

24  me that this information regarding the tracker that you're

25  concerned about from -- for the off-island search didn't come

```
1    to you until after the motion cutoff date?

2              MR. LUJAN:  Your Honor, until today.

3              THE COURT:  Until today?

4              MR. LUJAN:  Yes.

5              THE COURT:  All right.  So you were asking leave

6    to file your motion out of time, then?  Your pretrial motions

7    out of time?

8              MR. LUJAN:  Yes, Your Honor.

9              THE COURT:  Okay.  Well, is there anything else?

10   So you want to file your pretrial motions, and that will

11   obviously toll the speedy trial clock.  I have to give

12   everybody an opportunity to respond.  So when can you file

13   your motion then, Mr. Lujan, since you just found out today

14   and it's outside of -- it's outside the scheduling order?

15   I'll grant that since you've just told me you just found out

16   today --

17             MR. LUJAN:  How about a week from now, Your

18   Honor?

19             THE COURT:  Okay.  That's fine.  The Court will

20   grant --

21             MR. LUJAN:  Or I'm sorry, Your Honor.  May I have

22   until two Fridays from now, which is two days from a week from

23   now?

24             THE COURT:  Okay.  Today is August --

25             MR. LUJAN:  Nineteen.
```

1          THE COURT:  -- 19.

2          MR. LUJAN:  So, what, 28?

3          THE COURT:  I'm looking at August 19th -- okay,

4    28th.  All right, I'll give you until the 28th to file your

5    motion to suppress.  Is there any other motions that's going

6    to be filed then, based on this information, for either party?

7    For either -- either defense counsel or -- does that affect

8    you, as well, Mr. Cunliffe?

9          MR. CUNLIFFE:  Yes, Your Honor.

10         THE COURT:  Okay.  So motion to suppress.

11         MR. LUJAN:  I believe there will be several

12   motions to suppress, Your Honor.  One would be, of course,

13   what occurred in Torrance, and the other one is, you know, the

14   cell phones.

15         THE COURT:  Okay.  All right.  The Court will

16   grant that based on your information that you said you

17   received today.  So let's see.  We move it to August 28th.

18   And prosecution, I'm going to give you -- so you should give

19   it a week.  Can you get it done in a week, Mr. Lemons?

20         MR. LEMONS:  It depends on how many motions they

21   file and -- it's kind of asking me a question in a void.  I

22   would say give me a week.  If I need more time, I'll file an

23   appropriate motion.

24         THE COURT:  Okay.  Then let me see.  I'll give

25   you -- I'm going to give the prosecution -- I mean defense

1    August 28th -- both counsels will have an opportunity to file

2    their pretrial motions, including the -- okay.  Let's see.

3    Okay.  I'll give you -- August 28th to September -- on the

4    scheduling order, we normally give a week, a week, a week.

5    That's how we do it, I see here.

6                    MR. LEMONS:  That's correct.

7                    THE COURT:  Right.  So I'll give you -- because

8    I'm going to give him two weeks, I'll give you two weeks then.

9                    MR. LEMONS:  Thank you, Your Honor.

10                   THE COURT:  So what is that date, Carmen?

11   September 11th, and then the replies will be due

12   September 18th.  The Court will vacate the trial date based on

13   this new information regarding discovery and the extension of

14   the motion cutoff.  So then I'll set a hearing for that.  And

15   then after the Court -- after the Court makes its ruling on

16   the motions, then we'll reschedule the date of the trial.

17   Yeah.  So -- okay.  So until that time -- okay.  So let me

18   make sure that I look at this here.  So the time period from

19   today until the hearing date, the Court will -- under the

20   speedy trial clock, the time period should be excluded --

21                   (Pause.)

22                   THE COURT:  I want to make sure I got the right

23   dates then.  So August 28th -- let me look at this.  All

24   right.  So the Court will toll the speedy trial clock from

25   today until the date of the filing of the motions by defense

1  counsels, all right, which will be August 28th.  Then when

2  that -- when those motions are filed, then it automatically

3  tolls the speedy trial clock.  And then prosecution will be

4  able to file his response by September 11th, as I've

5  indicated.  Defense replies September 18th.  And then we will

6  set a hearing date thereafter on the motion to -- on any and

7  all motions.

8          In the meantime, though -- so everything will

9  stay on track in terms of the motions, pretrial motions, and

10  then -- I'm just trying to think.  Maybe I'll -- I'm trying to

11  decide if I should still order the trial brief before the

12  motions are heard.  You already have your trial brief ready,

13  prosecution?

14          MR. LEMONS:  I'm working on it.  I think it would

15  make more sense, from my point of view anyway, that we wait

16  until the motions have been --

17          THE COURT:  Decided?

18          MR. LEMONS:  Or at least filed.  I don't even

19  know what motions there are, but I would prefer that the Court

20  wait -- allow us to wait until they've been decided because it

21  may change everything.

22          THE COURT:  Yeah.  All right.  Let's do that.

23  I'll do that for this -- normally I wouldn't, but I will do

24  that for this case just because everything is out of order

25  right now.

1          Okay.  So let's set a hearing date, then, on the

2     motions to -- the defense motions.  I'll ask Ms. Santos.  In

3     the meantime, how are the -- the defendants are both out.  Mr.

4     Cunliffe, your client is obviously out?

5          MR. LUJAN:  Yes, Your Honor.

6          THE COURT:  And your client too, as well?

7          MR. LUJAN:  Yes, Your Honor.

8          THE COURT:  So there's no incidences.  I suppose

9     everybody is -- they're following pretrial release conditions?

10          MR. LUJAN:  As far as we know, Your Honor.  There

11     hasn't been any indications to us that there's any problems.

12          THE COURT:  Right.  Normally -- normally the

13     pretrial will let us know.  But I just want to make sure you

14     continue to -- Mr. Martinez and Mrs. Martinez, continue to

15     follow your pretrial release conditions that I have -- that I

16     believe have been ordered by Judge Manibusan.

17          Okay.  We'll get a date here.  So the Court will

18     vacate the trial date based on what's been happening today.

19     And in the meantime, are there any other issues?  I'll give

20     you the trial date in a second.  Carmen's just pulling it.  So

21     the Court will vacate the trial date, the trial brief date and

22     witness list, proposed voir dire.  All of those, I'll vacate

23     that, and the pretrial conference and jury selection date,

24     until the Court makes a ruling on the motion.  Then I'll reset

25     the trial.

1          MR. LEMONS:  Thank you, Your Honor.

2          THE COURT:  Okay.

3          (Pause.)

4          THE COURT:  Okay.  Hold on.  Just let me check

5     the dates if you don't mind, Counsel.  Just checking the dates

6     for the hearing.  Just checking the dates for the hearing.

7     I'm sorry.  Just checking our calendar.

8          (Pause.)

9          THE COURT:  October 8th at 9:30 a.m., we'll have

10    the hearing, hearing on motions.  So, Counsels, make sure you

11    have all your hearing on motions filed, both sides.  And then

12    if there's any issues of discovery, take care of it now.

13         MR. LEMONS:  Yes, Your Honor.

14         THE COURT:  Okay.  I'm sure -- I know you'll do

15    that, Mr. Lemons, so just make sure you take care of it --

16         MR. LEMONS:  Just one thing --

17         THE COURT:  -- so we don't have any delays.

18         MR. LEMONS:  -- the case is sealed and -- but I

19    will just ask the Court to permit me to turn over the plea

20    agreement and the indictment in that case to defense counsel.

21         THE COURT:  All right.  If there -- now, I'm

22    assuming that -- just because Mr. Black is a seasoned lawyer,

23    that maybe he has a reason for the delay, which, you know --

24    so I'm sure that the counsels can wait a few more days then,

25    because he's coming in on the 22nd, right?

1        MR. LEMONS:  Yes, Your Honor.  That's what he

2   indicated.

3        THE COURT:  Yeah.  So then why don't you just

4   wait until he comes in, and then as soon as you talk to him,

5   turn it over.  Okay.  I mean, I just think, generally, you

6   guys should have tried to work that out and given it to them.

7   That would be one less issue to have worry about in terms of

8   discovery.

9        MR. LEMONS:  Even though -- I'm sure he's not

10  going to have a problem with it.  I just -- I don't want to be

11  in violation of a court order, so I just ask the Court to

12  allow me to turn that over to defense counsel even though it

13  is sealed.

14       THE COURT:  Well, yeah, the Court will order

15  that.  I mean, if that's one of your witnesses, I suppose --

16  but I think because it's -- if you're saying Mr. Black is in

17  charge of that particular matter --

18       MR. LEMONS:  He is.

19       THE COURT:  -- and you want time to talk to him,

20  then go ahead and talk to him.  But you don't have to turn it

21  over today.  You have a few more days.  These guys can wait a

22  few more days, right?  You don't have any objections,

23  Mr. Cunliffe or Mr. Lujan, to waiting a few more days to get

24  the name of the informant?

25       MR. CUNLIFFE:  We know the name of the informant,

1   Your Honor.

2               THE COURT:  Of the plea agreement, I should say.

3               MR. CUNLIFFE:  It's what the terms of the plea

4   agreement are that are of interest.  But I -- I don't have a

5   problem with a couple more days, Your Honor.  I don't know

6   about Mr. Lujan.  But the question I have is, what

7   restrictions are placed upon my client with regard to the

8   sealed -- the document that's under seal?

9               THE COURT:  That's a good point.  That's a good

10  point.  I don't know, because I don't know when -- I mean,

11  right now it's sealed, and unless it's -- becomes unsealed,

12  which I'm not sure when -- if and when that'll happen -- okay.

13  Why don't you -- you know what, because I don't know Mr.

14  Black's theory, how he wants to proceed with that, why don't

15  you go ahead and just check it and -- because it's sensitive,

16  it's sealed.  At this point, it hasn't been unsealed.  Figure

17  it out.  And if you guys have to come into court and talk --

18  you know, be before the Court on the parameters of the

19  discussion of -- I mean, once it becomes unsealed, then it's

20  okay to speak about it.  But if -- right now it's in a sealed

21  status.

22              MR. LEMONS:  Yes, Your Honor.

23              THE COURT:  And it's not just -- I'm assuming

24  it's not just that defendant; might be others involved.  I'm

25  assuming that.

1          MR. LEMONS:  Mr. Cunliffe actually represents one

2     of the defendants in that case, and --

3          THE COURT:  Okay.

4          MR. LEMONS:  -- so he knows that the whole case

5     is sealed.

6          THE COURT:  He knows.  Okay.  All right.

7          MR. LUJAN:  I think one of the problems, at least

8     last I had a discussion, was some of the people who had been

9     indicted had not yet been picked up, and that may be why it

10    was still sealed.  I don't know if that's still the case.

11         THE COURT:  Okay.  So rather than -- I'm not

12    going to order that it be turned over today, based on

13    information you guys are giving me.  Mr. Lemons, you speak to

14    Mr. Black, because he's the prosecutor, and then you guys

15    decide how you want to proceed.  You'll know.

16         MR. LEMONS:  Okay.

17         THE COURT:  And if there's any issues, then you

18    guys -- if you need to come before the Court, then you can

19    just let me know on this issue of the parameter -- but once

20    it's unsealed, it's fine.

21         MR. LUJAN:  No, I understand.  It's not a problem

22    for me, but once my client is made aware of it, I want to

23    protect my client from getting in any kind of trouble if

24    there's some specific orders against him in that regard.

25         THE COURT:  As of right now, there's no specific

1  order.  You're not requesting any specific order?

2         MR. LEMONS:  No, I'm not, Your Honor.

3         THE COURT:  Because he doesn't have any

4  information.  But I assume that if there's any type of order

5  that you're going to request, you can do that.

6         MR. LEMONS:  Yes.

7         THE COURT:  Okay.  I understand that.

8         Okay.  Anything else, Counsels?

9         MR. LUJAN:  Well, the only thing, Your Honor,

10  is --

11         THE COURT:  Yes.

12         MR. LUJAN:  And I guess I'm handicapped here in

13  this discussion because I don't know, you know, about that

14  sealed matter or what, you know.  But, you know, in the event

15  that there's a motion that's possible from, you know, once we

16  receive that, obviously I take it the Court would allow us to

17  file a later date.

18         THE COURT:  Right.  Let's try to give it on the

19  date that you have now, you know.  I'm sure that Mr. Lemons is

20  going to try to resolve this as soon as possible because he

21  doesn't want this outstanding discovery to the extent that he

22  can.  I mean, if this person is really going to testify and

23  he's a key witness -- is that person a key witness?

24         MR. LEMONS:  Yes, Your Honor.

25         THE COURT:  Okay.  So if that person is a key

1   witness, then you're going to want to get this over to defense

2   counsel as soon as possible to the extent it doesn't mess up

3   your case.  I mean -- but this is -- I mean, this case is

4   ongoing.  It's on the speedy trial clock already.

5           MR. LEMONS:  Yes, Your Honor.

6           THE COURT:  So, I mean, I'm sure you know the

7   clock is ticking.  And so in terms of discovery, you can

8   figure that out.  But the sooner you get it to him, the faster

9   he can file any motion with regard to the informant, if it

10  there's any motion to be filed.  And hopefully it will be on

11  the date that the Court has already scheduled.  You know,

12  we'll cross that bridge if we have to at another time, if you

13  don't get that information on time and you need more time.

14          MR. LUJAN:  Yes, Your Honor.  Thank you.

15          THE COURT:  Is that fair enough for everybody?

16          MR. LUJAN:  Yes, Your Honor.  Thank you.

17          THE COURT:  All right.  Now, why is this case

18  still sealed?  Is this case still sealed?

19          MR. LEMONS:  Defense moved to seal the case --

20          THE COURT:  Why?

21          MR. LEMONS:  Not me.

22          THE COURT:  Okay.  Why are we having this case

23  sealed?

24          MR. CUNLIFFE:  Your Honor, the reason we would

25  move is because we were in negotiations with a -- and continue

1   to be in negotiation with Mr. Lemons about the possibility of

2   resolving the case.  It behooves my client's interests to have

3   it sealed in that regard so that it doesn't become a public

4   knowledge and affect the ability -- if we can reach a

5   resolution, the affectability for them to do anything.

6           THE COURT:  I normally don't -- okay.  The Court

7   normally doesn't seal just because plea negotiations are going

8   on.

9           MR. CUNLIFFE:  Understood.

10           THE COURT:  Yeah, that's a -- I mean, it's

11   usually like a safety issue.  And, you know -- and usually the

12   U.S. Attorneys Office will chime in on this issue of sealing.

13   It's highly unusual for -- for the Court -- I mean, if I did

14   that, we'd be doing that with all our cases.

15           MR. CUNLIFFE:  I understand, Your Honor.  That

16   was the reason we were able to obtain the -- because of the

17   cooperation and the fact that this dealt with some fairly

18   heavily involved individuals in the state of California.

19           THE COURT:  Okay.  What's your position,

20   Mr. Lemons, on this issue?  Because I was wondering why was --

21   why is this case sealed?

22           MR. LEMONS:  Your Honor, when defense counsel

23   moved to seal this case --

24           THE COURT:  Okay.

25           MR. LEMONS:  -- I -- our position was -- as it

1   usually is, is that because -- because we did not seek

2   preapproval from D.C., we didn't agree to it.  We also did not

3   object to it --

4                   THE COURT:  Okay.

5                   MR. LEMONS:  -- when they made their motion.

6                   THE COURT:  All right.  But now that we're here,

7   almost ready for trial, we're getting into motions, do you

8   think it's appropriate that this matter continue to be sealed?

9   I personally don't think so just based on -- I've never done

10  that -- I've never sealed it based on plea negotiations,

11  especially not this far into a -- not this far into a case.

12                  MR. LEMONS:  Well, Your Honor, actually, had the

13  Court not moved the dates, I was going to file a motion to

14  unseal this matter.  But given that we've been given another

15  month, I'm willing to hold off on that motion.

16                  THE COURT:  But why?  For what reason?  You guys

17  are not under plea negotiations any longer.  That was the

18  purpose, right?  And I don't want to get in the habit of doing

19  this, because every defense counsel is going to come in -- I

20  know Mr. Cunliffe and Mr. Lujan will call up all the attorneys

21  and say, "Hey, just ask the judge to continue this matter on

22  every single case that comes forward."  And we normally really

23  reserve it for situations where there is a safety issue.

24                  So my notes -- so that -- the defense counsel had

25  asked that it be sealed because their clients wished to

1  cooperate in bringing down the California suppliers, but

2  that's no longer the case.  That's what my notes indicate from

3  downstairs.

4          MR. LEMONS:  I think that's correct.  And,

5  actually, I have no problems if the Court unseals this matter

6  today.

7          THE COURT:  Well, okay.  I'm just wondering, do I

8  have authority?  Should I do it?  Doesn't seem like it.

9          MR. CUNLIFFE:  Your Honor, we're asking that it

10  not be the case.  I mean, we have information that after my

11  client was arrested in California, the people who had -- he's

12  alleged to have been involved with, sent people to Guam to

13  check the courthouse and find out if a case had been filed out

14  here and were investigating and looking at things in Guam.

15  And we have some concern from a safety point of view of my

16  client and his wife's safety if this became unsealed, as long

17  as we're negotiating the matter.

18          THE COURT:  I understand that, but I mean -- but,

19  just generally, Mr. Cunliffe, every defendant that comes into

20  Court, they all feel unsafe once they -- they get arrested.

21          MR. CUNLIFFE:  I understand the Court's position.

22  I mean, I've had discussions with my client and, you know,

23  basically I would concur that in this situation, if they are

24  attempting to cooperate, as they continue to attempt to

25  cooperate with the government, that their lives would be in

1    danger.

2                    THE COURT:  But that's not the situation now;

3    correct?

4                    MR. LEMONS:  It doesn't appear that way to me.

5    We're going into filing motions, and their allegations that

6    officers or agents have violated the defendants'

7    constitutional rights -- I think we're past that stage.

8                    THE COURT:  Okay.

9                    MR. CUNLIFFE:  I would just -- I would just

10   perhaps, Your Honor, indicate that the decision to unseal be

11   held in abeyance until next Friday, when and if motions are

12   filed.  If motions are filed, then I think the Court could

13   certainly unseal it at that point.

14                   MR. LUJAN:  Your Honor, I would -- I would join

15   in that.

16                   THE COURT:  And the reason -- okay.  I figured

17   you would.

18                   And the reason is?  Between now and next Friday,

19   could you, you know -- you're still cooperating?  You think

20   you're going to be cooperating?  I mean, I'm going to tell you

21   this:  If there's an issue --

22                   MR. CUNLIFFE:  I'm having -- I'm in discussions

23   with my client about that issue, Your Honor.

24                   THE COURT:  Okay.  So that's what I'm saying.

25   Just generally, if your -- if your clients are going to

1    cooperate -- intend to cooperate and they're -- and they're --

2    obviously that involves a safety issue.  The Court is inclined

3    to consider that.  And if you're representing that to me now,

4    I will consider that request.

5           MR. CUNLIFFE:  My client and I are discussing

6    that matter and have been having ongoing discussions on that

7    matter.

8           THE COURT:  Mm-hmm.  And you, Mr. Lujan?  Your

9    client?

10          MR. LUJAN:  Of course, Your Honor.  Same thing.

11          THE COURT:  Same issue?

12          MR. LUJAN:  Yes.

13          THE COURT:  All right.  The Court will -- the

14    Court will continue to seal this matter, although it's highly

15    unusual -- but I will continue to seal it until the 28th of

16    August.  Is it 28th of August?  Is that what I said?  Yeah,

17    the 28th of August, based on the request.

18          MR. CUNLIFFE:  Thank you, Your Honor.

19          THE COURT:  All right.  That'll be it.  Thank

20    you.  You guys have a nice day.

21          MR. LEMONS:  Thank you, Your Honor.

22          THE COURT:  Take care.

23          Yeah.  If the motions are -- let me just say,

24    once the motions are filed, it automatically is unsealed,

25    okay, once the motions are filed.

1          Okay.  Thank you.

2              (Proceedings concluded at 10:31 a.m.)

3                      * * *

4      --------------------------------------------------

5                  CERTIFICATE OF REPORTER

6

7   CITY OF HAGATNA              )
                                 )  ss.
8   TERRITORY OF GUAM            )

9

10         I, Veronica F. Reilly, Official Court Reporter for

11   the District Court of Guam, do hereby certify the foregoing

12   pages 1 to 44, inclusive, to be a true and correct transcript

13   made of the within-entitled proceedings, at the date and time

14   therein set forth.

15         Dated this 15th day of September, 2015.

16

17                     /s/Veronica F. Reilly
                       Veronica F. Reilly
18

19

20

21

22

23

24

25